UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| NORTHPOINT TECHNOLOGY, LTD., <br><br> Plaintiff, <br><br> v. <br><br> DIRECTV, INC., et al., <br><br> Defendants. | Case No. A09CA 506 JN |

**DEFENDANT DIRECTV, INC.'S MOTION TO COMPEL
RESPONSES TO INTERROGATORY NOS. 1, 2 AND 6**

I.   **INTRODUCTION**

In this patent infringement case, Defendant DIRECTV, Inc. moves to compel interrogatory responses from Plaintiff Northpoint Technology, Ltd. Northpoint failed to provide complete responses to DIRECTV's **Interrogatory No. 1** (concerning Northpoint's alleged conception date), **Interrogatory No. 2** (concerning invalidity contentions), and **Interrogatory No. 6** (concerning Northpoint's alleged damages). After Northpoint provided insufficient answers, DIRECTV sent a letter requesting complete responses and met and conferred with Northpoint's counsel. Northpoint served supplemental responses, which remain insufficient.

DIRECTV needs the requested information so that it can test Northpoint's contentions through discovery, and in order to prepare its own defenses and its forthcoming expert reports. The discovery rules are designed to require prompt disclosure of information and to prevent trial by ambush. Thus, DIRECTV requests the Court's intervention, as follows:

**Interrogatory No. 1**. DIRECTV asked Northpoint to state facts and identify documents supporting its claimed conception date for the patent in suit (U.S. Patent No. 6,208,636, or "the '636 Patent"). Northpoint's response alleges a conception date of September 18, 1996, but fails to identify any facts supporting that date. Although the response identifies a number of documents by Bates number, it fails to explain what these documents purportedly show, or even who created them. Northpoint also purports to rely on "privileged documents," which Northpoint refuses to produce at this time, instead reserving the right to do so at some unspecified time in the future. DIRECTV needs the requested information for its invalidity defense and for its opening expert reports (due December 14, 2010). The Court should order a full response to Interrogatory No. 1, and should preclude Northpoint from relying on documents withheld as privileged.

**Interrogatory No. 2**. DIRECTV asked Northpoint to respond to the Defendants' detailed invalidity contentions and to state what claim elements were missing from the prior art. Northpoint's initial and supplemental responses fail to address *any* of the prior art references identified in Defendants' invalidity contentions. DIRECTV needs to know what elements Northpoint contends are missing from each of the prior art references, so that DIRECTV can focus its discovery efforts (and expert reports) accordingly. The Court should order Northpoint to provide a complete response to Interrogatory No. 2.

**Interrogatory No. 6**. DIRECTV asked Northpoint to provide the factual bases for its damage claim. Northpoint refuses to provide any information before expert reports. That is too late, as it would preclude DIRECTV from taking any discovery with respect to Northpoint's damage claim. The Court should order Northpoint to provide a full response now.

## II.   BACKGROUND

Northpoint filed this suit for patent infringement on July 2, 2009. In addition to DIRECTV, Northpoint also sued DISH Network Corporation and EchoStar Technologies, L.L.C., which are represented by separate counsel. Defendants deny infringement, and have also counterclaimed for a declaration that the '636 Patent is invalid over the prior art and unenforceable in light of inequitable conduct. Dkt. Nos. 50, 51. Opening expert reports in this case are due on December 14, 2010, with responsive reports due January 14, 2011. Dkt. No. 47 at 3. Discovery closes on March 1, 2011.

DIRECTV provided Northpoint with detailed invalidity contentions on February 12, 2010, as required by the Agreed Scheduling Order in this case. DIRECTV also provided Supplemental Invalidity Contentions in response to an interrogatory from Northpoint. Exhibit B to this motion is DIRECTV's First Supplemental Invalidity Contentions with a sample invalidity claim chart that compares one of DIRECTV's prior art reference combinations (U.S. Patent No.

5,940,737 to Eastman in view of "Digital Satellite TV" by Baylin) to the asserted claims of the '636 patent. DIRECTV provided similar claim charts to Northpoint for each of DIRECTV's prior art references, and for each reference, DIRECTV identified specific passages that disclose the claim elements of the '636 Patent.

DIRECTV propounded its First Set of Interrogatories on May 13, 2010, including Interrogatory Nos. 1, 2 and 6. Ex. C (DIRECTV's 5/13/2010 Interrog.). Northpoint responded on July 19, 2010, but failed to provide complete responses to a number of interrogatories. Ex. D (Northpoint's 7/19/2010 Interrog. Responses). DIRECTV immediately requested a meet-and-confer in a letter dated July 21, 2010, which spelled out the deficiencies in Northpoint's responses. Ex. E (7/21/2010 Letter from G. Ruttenberg). On July 23, 2010, the parties discussed the issues raised in DIRECTV's letter, and they exchanged additional correspondence thereafter. Northpoint provided supplemental responses on August 6, 2010, but that supplement did not correct the deficiencies in Northpoint's response to Interrogatory Nos. 1, 2, and 6. Ex. A (Northpoint's 8/6/2010 Supp. Interrog. Responses). DIRECTV seeks the Court's intervention to remedy Northpoint's deficiencies.

### III. ARGUMENT

#### A. The Court Should Order a Complete Response to Interrogatory No. 1, and Foreclose Northpoint from Relying on Unproduced "Privileged" Documents.

Interrogatory No. 1 asks Northpoint to identify, *inter alia*, its alleged "conception" date for the asserted claims of the '636 Patent, and to identify all facts and documents allegedly supporting that date. The conception date is integral to any invalidity analysis in a patent case because that date can determine what is or is not prior art. The conception date is presumed to be the filing date of the patent, unless the patentee can prove (and corroborate) an earlier conception date. If the patentee proves an earlier conception date, certain references may not be prior art.

3

Thus, an accused infringer needs to assess the patentee's alleged conception date—including any corroborating evidence—in formulating its invalidity defense.

Interrogatory No. 1 and Northpoint's responses provide as follows:

**INTERROGATORY NO. 1:**
For each claim of the '636 patent, identify the dates on which the alleged invention claimed therein was first conceived and first reduced to practice, and state all facts and identify all documents (by production number) that relate to establishing such dates, including but not limited to the first written description of the invention, where the invention was first reduced to practice; and when, where and to whom the invention was first disclosed.

**RESPONSE:**
Northpoint incorporates here the general objections set forth above. Northpoint further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving the foregoing objections, Northpoint responds as follow:
The claims of the '636 patent were first conceived at least as early as September 18, 1996. The first written description is also at least as early as September 18, 1996. The claims of the '636 patent were first reduced to practice on May 28, 1998. The invention was first disclosed in Austin, Texas to Russ Culbertson, the Tawils' patent prosecutor, at least as early as September 18, 1996.

**SUPPLEMENTAL RESPONSE:**
Relevant documents include NPT 696, NPT 697, NPT 698, NPT 699, NPT 700, NPT 701, NPT 702, NPT 703, NPT 704, NPT 705, NPT 706, NPT 707, NPT 708, NPT 709, NPT 710, NPT 711, NPT 712, NPT 713, NPT 715, NPT 716, NPT 717, NPT 718, NPT 719, NPT 720, NPT 721, NPT 722, NPT 723, NPT 724, NPT 725, NPT 726, NPT 727, NPT 728, NPT 731, NPT 732, NPT 734, NPT 735, NPT 736, NPT 737, NPT 738, NPT 739, NPT 740, NPT 741, NPT 742, NPT 743, NPT 744, NPT 745, NPT 746, NPT 747, NPT 748, NPT 749, NPT 750, NPT 751, and NPT 752, as well as additional documents as shown on the attached privilege log.

Northpoint's responses are deficient and prevent DIRECTV from taking discovery with respect to the claimed conception date. For example, Northpoint contends that "[t]he claims of the '636 patent were first conceived at least as early as September 18, 1996," but Northpoint fails to substantiate its contention with any corroborating evidence. Northpoint suggests there was a "written description" of the claims disclosed to its prosecution counsel on the alleged conception

date, but Northpoint has never produced this "written description." In its supplemental response, Northpoint identifies 50 pages of documents by Bates numbers. But all of these appear irrelevant, and Northpoint does not explain how they purportedly support its alleged conception date. Northpoint also fails to explain who created the documents, or when they were allegedly created. Indeed, some of the documents are undated and unsigned. Perhaps most egregiously, Northpoint relies on two *unproduced* documents identified on a "privilege log." Ex. A at 4-5. Northpoint apparently reserves the right to produce these documents at some unspecified time in the future. And it fails to correlate any disclosure in these documents with the claim limitations of the '636 patent, as it must do in order to prove a conception date.

DIRECTV is materially prejudiced by Northpoint's incomplete responses. The alleged conception date—and the patentee's ability to substantiate such a date—is critically important in this patent infringement action. For example, one of DIRECTV's key prior art references is U.S. Patent No. 5,940,737 to Eastman, which was filed February 27, 1997, between Northpoint's alleged conception date and the '636 patent filing date. DIRECTV needs to assess Northpoint's conception evidence as part of DIRECTV's invalidity defense and for its invalidity expert reports, which are due December 14, 2010. If Northpoint contends it has no further information in response to Interrogatory No. 1, then it should be limited to the information set forth in its response. In short, the Court should order the following relief:

*First*, Northpoint should be ordered to identify and describe all facts and documents that it relies upon to support its alleged conception date.

*Second*, if Northpoint contends that any documents corroborate its alleged conception date, Northpoint should be ordered to identify the particular portions of the documents that allegedly support conception of each limitation in the asserted claims of the '636 Patent.

5

***Third***, to the extent Northpoint relies on any privileged documents, Northpoint should produce those documents immediately, or be foreclosed from relying upon them in this action.

***Fourth***, if Northpoint fails to provide a complete response, it should be precluded from trying to prove any conception date earlier than the filing date of the '636 Patent.

**B.    The Court Should Order a Complete Response to Interrogatory No. 2.**

In response to Interrogatory No. 2, Northpoint refuses to provide the same type of information that it demanded from DIRECTV on the issue of patent validity. Namely, in its Interrogatory No. 4, Northpoint asked the Defendants to provide detailed invalidity contentions (Ex. G  5/3/10 Northpoint Interrogs.), and DIRECTV complied. Proof of invalidity requires a comparison of each prior art reference with each element of the asserted claims. Thus, DIRECTV mapped each asserted prior art reference with each element of the asserted claims in the '636 Patent. *E.g.*, Ex. B (example of claim charts provided by DIRECTV).

DIRECTV propounded Interrogatory No. 2, asking Northpoint to respond to the Defendants' invalidity contentions (preferably in chart format), and to identify those claim elements Northpoint believes are missing from each prior art reference. DIRECTV essentially asked Northpoint to provide the flip-side of DIRECTV's invalidity contentions. But Northpoint refuses to do so. Indeed, Northpoint's initial and supplemental responses fail to address ***any*** of the prior art references identified by the Defendants.

Interrogatory No. 2 and Northpoint's responses state as follows:

**INTERROGATORY NO. 2:**
If you contend that the '636 patent is not invalid in light of the prior art set forth in the Invalidity Contentions of DIRECTV, Dish Network and Echostar, state the basis for your contention, including identification in chart form of any element that you contend is missing from each prior art reference for each asserted claim.

**RESPONSE:**

Northpoint incorporates here the general objections set forth above. Northpoint further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Northpoint also objects to this Interrogatory on the basis that it is overly broad and unduly burdensome in requiring Northpoint to marshal all its evidence and capture its entire defensive case in response to this one interrogatory. Northpoint objects to this Interrogatory to the extent it seeks a legal conclusion or opinion. Northpoint objects to this Interrogatory as premature. Subject to and without waiving the foregoing objections, Northpoint responds as follows:

Defendants' invalidity contentions are based on their proposed claim constructions which incorrectly seek to separate the invention from its focus on "data streams". The invention at issue enables one location to select and process data streams from various sources. This is important because each data stream can contain several carrier frequencies, frequencies on which data for one or more channels reside. If the one location receives two or more data streams that happen to have a carrier frequency that is the same, the invention avoids any interference by only enabling one data stream to be processed by the receiver at the one location at any given time, depending on what data the user desires. Providing multiple data streams, and allowing the user to select data from one, allows providers to offer subscribers a wider variety of options.

Northpoint reserves the right to supplement this response after claim constructions have been determined by the Court.

**SUPPLEMENTAL RESPONSE:**

Defendants' invalidity contentions assume that the simultaneous use of two opposite polarizations within the same bandwidth can comprise two different "data streams". However, the '636 patent makes clear that one advantage of the invention is the ability to handle identical carrier frequencies. Right hand and left hand polarizations are offset so that the carrier frequencies are not identical.

The Defendant's invalidity contentions also assume that a "data stream" is interchangeable with a "signal" and thus have included systems which are geared towards the handling of two different kinds of signals. The invention is directed towards the handling of multiple data streams which carry the same kinds of signals. The "invention relates to digital data transmission and more particularly to an apparatus and method for selecting from multiple data streams to produce a single data output." Col. 1, lines 6-8. It is further stated that "multiple carrier frequencies together comprise a data stream." Col. 1, line 28. "Each carrier frequency carries data for several different discrete outputs, which in the DBS example, comprise television channels." Col. 1, lines 25-28.

Northpoint reserves the right to supplement this response after claim constructions have been determined by the Court.

First, Northpoint's objections are unwarranted. Interrogatory No. 2 seeks the same type of information Northpoint requested from DIRECTV in Northpoint's Interrogatory No. 4, which

7

DIRECTV answered in full. For example, DIRECTV correlated the Eastman reference (and all other references) described above with each element of the asserted claims. Northpoint is equally capable of correlating the Eastman reference (and the other charted references) with the claim elements and identifying any claim elements Northpoint contends are missing from the prior art reference.

Next, Northpoint complains that DIRECTV's invalidity contentions are based on incorrect claim constructions. An invalidity analysis requires two steps: (1) construing the claims, and (2) comparing the prior art references with the properly construed claims. But Northpoint fails to address the prior art references under *any* claim construction. Northpoint's response completely side-steps the question of validity and improperly focuses on what Northpoint believes to be the *purpose* of the invention. Northpoint never states which, if any, claim elements are supposedly missing from any of the prior art references.

DIRECTV is entitled to know Northpoint's contentions on the question of validity, so that DIRECTV can prepare its invalidity defense and direct its further discovery. Accordingly, the Court should order Northpoint to answer Interrogatory No. 2 and to identify "any element that [Northpoint] contend[s] is missing from each prior art reference for each asserted claim." If Northpoint fails to fully address a prior art reference in its interrogatory response, the Court should preclude Northpoint from doing so at trial or in response to substantive motions.

C.   **The Court Should Order a Complete Response to Interrogatory No. 6.**

Northpoint refuses to provide *any* information concerning its damage claim, despite repeated requests from DIRECTV. Northpoint instituted this action more than a year ago, and expert reports are due in a few months. Without knowing the factual bases for Northpoint's damage claim, DIRECTV cannot take meaningful discovery or prepare a defense to that claim.

Interrogatory No. 6 and Northpoint's response are as follows:

8

**INTERROGATORY NO. 6:**
If you contend that you are entitled to any monetary recovery from DIRECTV as a result of alleged infringement of the '636 patent, state your contention as to the amount of the monetary recovery you seek, and describe in detail the legal and factual basis for such contention, including identification (by production number) of any documents supporting your contention and any person with knowledge of facts that support your contention.

**RESPONSE:**
Northpoint incorporates here the general objections set forth above. Northpoint further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Northpoint also objects to this Interrogatory on the basis that it is overly broad and unduly burdensome in requiring Northpoint to marshal all its evidence and capture its entire damages case in response to this one interrogatory. Northpoint objects to this Interrogatory to the extent it seeks a legal conclusion or opinion. Northpoint objects to this Interrogatory as premature.
Subject to and without waiving the foregoing objections, Northpoint responds that it is entitled to no less than a reasonable royalty for DirecTV's infringement of the '636 Patent.

As the outset, Northpoint was required to provide information regarding its damage claim in its initial disclosures. The parties exchanged their Rule 26(a) Initial Disclosures on December 15, 2010. Among other things, Rule 26(a)(1)(A)(iii) requires Northpoint to provide "a computation of each category of damages claimed" and to "make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based." Northpoint failed to provide this information. In its disclosures, Northpoint stated only that it "intends to seek a reasonable royalty on all products that infringe the '636 Patent." Ex. F (Northpoint's Initial Disclosures at 2). Northpoint did not provide any computation of damages, nor did it identify any relevant documents or other evidentiary material. *Id.* at 2-3.

Thus, DIRECTV propounded Interrogatory No. 6, asking Northpoint to provide factual information concerning its damages claim. Beyond its unsubstantiated objections, Northpoint stated "that it is entitled to no less than a reasonable royalty for DirecTV's infringement of the '636 Patent." Yet Northpoint fails to identify a single fact, witness or document that supports its

9

damage claim. Courts and experts typically rely on fifteen *Georgia-Pacific* factors to establish a reasonable royalty in a patent infringement case.[1] Northpoint, however, has provided no factual information relating to any of these factors. Nor has Northpoint identified a royalty rate or amount, or even how Northpoint intends to compute its damages.

During the parties' meet-and-confer, Northpoint insisted only that Interrogatory No. 6 was premature. Absent Court intervention, Northpoint will not provide any information concerning its damages theory until its expert report. But by that point, DIRECTV will have only one month to prepare a responsive report, with no meaningful opportunity to take discovery concerning the facts underlying Northpoint's damage claim.

The Court should order a complete response to Interrogatory No. 6, based on facts currently known to Northpoint. If Northpoint fails to do so, it should be precluded from presenting such evidence at trial or in response to substantive motions.

## IV.    CONCLUSION

The Court should overrule Northpoint's objections and order complete responses to Interrogatory Nos. 1, 2 and 6. If Northpoint fails to provide complete responses, it should be precluded from presenting such evidence at trial or in connection with substantive motions.

---

[1] The *Georgia-Pacific* factors include (1) royalties patentee receives for licensing the patent in suit, (2) rates licensee pays for use of other comparable patents, (3) nature and scope of license, (4) licensor's established policy and marketing program to maintain patent monopoly, (5) commercial relationship between licensor and licensee, (6) derivative or convoyed sales, (7) duration of patent and term of license, (8) established profitability, commercial success and current popularity of the covered products, (9) utility and advantages over old devices, (10) nature of the patented invention, (11) the extent to which the infringer has made use of the invention and the value of such use, (12) the portion of profit or selling price customarily allowed for the use of the invention, (13) the portion of realizable profit attributable to the invention, (14) expert testimony, and (15) outcome from hypothetical negotiation at the time infringement began. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 853 (Fed. Cir. 2010).

Dated:  September 7, 2010                                   Respectfully submitted,

                                                  /s/  Alexander F. MacKinnon
                                            J. Hampton Skelton
                                            Texas Bar No. 18457700
                                            Eva C. Ramos
                                            Texas Bar No. 20143100
                                            SKELTON & WOODY
                                            P.O. Box 1609
                                            Austin, TX  78767
                                            Telephone:  (512) 651-7000
                                            Facsimile:  (512) 651-7001
                                            Email: hskelton@skeltonwoody.com
                                                       eramos@skeltonwoody.com

                                            R. Alexander Pilmer *(pro hac vice)*
                                            Alexander F. MacKinnon *(pro hac vice)*
                                            Giam Nguyen *(pro hac vice)*
                                            KIRKLAND & ELLIS LLP
                                            333 South Hope Street
                                            Los Angeles, California  90071
                                            Telephone:   (213) 680-8400
                                            Facsimile:   (213) 680-8500
                                            Email: alexander.pilmer@kirkland.com
                                                       alexander.mackinnon@kirkland.com
                                                       giam.nguyen@kirkland.com

                                            *Counsel for Defendant DIRECTV, Inc.*

## CERTIFICATE OF CONFERENCE

Counsel for DIRECTV, Inc. conferred with counsel for Northpoint Technology, Ltd. regarding the substance of this Motion, and no agreement was reached.

                                                  /s/ Giam Nguyen
                                            Giam Nguyen

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 7th day of September, 2010, I am electronically filing the foregoing with the Clerk of the Court using the Case Management/Electronic Case Files ("CM/ECF") system, which will send notification of such filing to the following CM/ECF participants:

| | |
|---|---|
| Edward W. Goldstein<br>Alisa A. Lipski<br>GOLDSTEIN, FAUCETT & PREBEG, LLP<br>1177 West Loop South, Suite 400<br>Houston, Texas 77027<br>Telephone: (713) 877-1515<br>Facsimile: (713) 877-1737<br>*Counsel for Plaintiff* | Rachel Krevans<br>Jason A. Crotty<br>Matthew A. Chivvis<br>Heather Bobkova<br>MORRISON FOERSTER<br>425 Market St.<br>San Francisco, CA 94105<br>Telephone: (415) 268-6381<br>Facsimile: (415) 268-7522<br>*Counsel for EchoStar Technologies L.L.C. and DISH Network L.L.C.* |

                                            /s/ Eva C. Ramos<br>
                                            Eva C. Ramos