FILED
2011 JUN 17 PM 2:43
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NORTHPOINT TECHNOLOGY, LTD., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 09-CV-506-JRN |
| | § | |
| THE DIRECTV GROUP, INC., et. al. | § | |
| Defendants. | § | |
| | § | |

## ORDER GRANTING DIRECTV INC.'S MOTION FOR SUMMARY JUDGMENT

Before the Court in the above-entitled and styled cause of action are Defendant DirecTV, Inc.'s Motion for Summary Judgment of Invalidty (Clerk's Dkt. # 114); Plaintiff Northpoint Technology, Ltd.'s Opposition to DirecTV, Inc.'s Motion for Summary Judgment of Invalidity (Clerk's Dkt. # 125); DirecTV's Reply in Support of its Motion for Summary Judgment of Invalidity (Clerk's Dkt. # 130); and Defendants EchoStar Technologies LLC's and Dish Network LLC's Notice to Join in DitecTV's Motion for Summary Judgment Regarding Conception Date (Clerk's Dkt. # 119). After reviewing these motions, and receiving the Special Master's technical advice and approval (Clerk's Dkt. # 106), the Court **GRANTS** DirecTV's Motion (Clerk's Dkt. # 114) **IN PART**. Specifically, the Court finds that (1) the Eastman Patent anticipates claims 1, 7, 8, 14, 15, 16, 18, and 19 of Northpoint's '636 Patent, rendering those claims invalid; and (2) Northpoint's conception date for the '636 Patent is not prior to the February 27, 1997 filing date of the Eastman Patent. The Court does not consider whether the Lusignan Patent anticipates the '636 Patent's claims.

### Facts

When a homeowner subscribes to satellite television, a technician shows up, installs a

satellite dish and a television box, and then he gives you a new controller. At a general level, this lawsuit involves a patent on those satellite dishes and the equipment that accompanies them.

The patent at issue in this case spawned from two engineers, Carmen and Saleem Tawil. This couple spent years developing various products that would complement the Direct Broadcast Satellite industry. On May 28, 1998, the Tawils filed a patent for a digital satellite televison system that can receive and process data streams that carry different information but share overlapping frequencies. By creating a device to accommodate two data streams that would otherwise interfere with one another, the Tawils were offering customers greater access to channels without the need of additional satellite receivers or satellite boxes. On March 27, 2001, the Patent and Trademark Office issued United States Patent Number 6,208,636. By that time, all rights in the '636 Patent had already been assigned to Northpoint.

Northpoint now contends that all of the defendants in this case have infringed on the '636 Patent as a result of their involvement in the satellite television business. The defendants deny infringement and also claim that the '636 Patent is invalid because it is both obvious and anticipated. Here, the Court reviews only the anticipation argument with regard to the Eastman Patent.

## Reasoning

In its Motion for Summary Judgment, DirecTV argues that the Eastman Patent anticipates claims 1, 7, 8, 14, 15, 16, 18, and 19 of the '636 Patent; the Court agrees. Furthermore, Northpoint cannot prove that the Tawils conceived of the '636 Patent prior to the date that the Eastman Patent was filed. As a consequence, DirecTV's Motion for Summary Judgment, with respect to the Eastman Patent, is granted.

### A. The Eastman Patent anticipates the '636 Patent

The Eastman Patent anticipates all of the asserted claims of the '636 Patent. The Eastman Patent is also prior art as it was filed with the PTO on February 27, 1997, over a year prior to the May 28, 1998 filing date of the '636 Patent. A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention. *See Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 747 (Fed. Cir. 1987). Moreover, a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference. *See Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991). Although anticipation is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact. *See Leggett & Platt, Inc. v. VUTEK, Inc.*, 537 F.3d 1349, 1352 (Fed. Cir. 2008) (citations and quotations omitted). DirecTV supports its anticipation argument with its invalidity contentions (Clerk's Dkt. # 115, Ex. H, I) and with the declaration of its expert, Bruce Elbert (Clerk's Dkt. # 144, Ex. C). After thoroughly reviewing these documents as well as the Eastman Patent (Clerk's Dkt. # 114, Ex. D), the '636 Patent (Clerk's Dkt. # 114, Ex. A), and the Kanda Patent (Clerk's Dkt. # 114, Ex. E), the Court finds by clear and convincing evidence that claims 1, 7, 8, 14, 15, 16, 18, and 19 of the '636 Patent (all of the asserted claims) are invalid due to anticipation.

#### i. Northpoint conceded that the Eastman Patent anticipates all of the claims of the '636 Patent

Further support for DirecTV's invalidity argument, and the Court's decision, comes from Northpoint's court-ordered response to a binding interrogatory. In its Interrogatory No. 2, DirecTV specifically asked Northpoint to identify any element in the '636 Patent that was missing from the

3

Eastman Patent. (Clerk's Dkt. # 116, Ex. L). After Northpoint continually failed to provide an adequate response, Magistrate Judge Pitman ordered Northpoint to "Fully Answer." (Clerk's Dkt. # 82 at 1). When the answer came in, Northpoint did not contend that any element from the Eastman Patent was missing. Rather, the sole response was "[b]ased on Northpoint's earlier date of invention,[the Eastman Patent] is not prior art to the Northpoint '636 patent." (Clerk's Dkt. # 116, Ex. L). Significantly, there was no equivocation from this response until DirecTV filed its motion for summary judgment.

When DirecTV filed its Motion for Summary Judgment asserting that the Eastman Patent anticipated all of the asserted claims of the '636 Patent, Northpoint unconvincingly changed its tune. Northpoint argued in a page-length paragraph that several elements of the '636 Patent are missing from the Eastman Patent. *See* (Clerk's Dkt. # 125 at 3–4). Throughout its argument, Northpoint did not address the fact that it previously made no mention of the Eastman Patent's missing elements in its court-ordered interrogatory. Moreover, Northpoint's opposition relies only on conclusory attorney argument instead of admissible evidence. *See id.* Ultimately, this effort appears to be a last-minute attempt to muddy the waters and survive a motion for summary judgment.

But the Court is not persuaded by Northpoint's argument. After reviewing the summary judgment record, the Court finds that the Eastman Patent discloses all of the asserted claims from the '636 Patent. Indeed, the Court agrees with Northpoint's response to DirecTV's Interrogatory No. 2: the only issue is whether the Tawils can prove conception of the '636 Patent before the Eastman Patent was filed. *See* (Clerk's Dkt. # 116, Ex. L). This leads into the discussion of conception.

### B. Northpoint's Conception Argument Fails

Northpoint cannot show conception of the '636 Patent prior to the February 27, 1997 filing

date of the Eastman Patent. Northpoint argues that the Tawils conceived of the '636 Patent around September of 1996. *See* (Clerk's Dkt. # 125 at 5–7). This contention fails for two reasons. First, inventor testimony (Mrs. Tawil's) lays the foundation for Northpoint's conception argument. But inventor testimony must be corroborated. The documents cited by Northpoint do not corroborate Mrs. Tawil's testimony. And second, even if the documents cited by Northpoint did corroborate Mrs. Tawil's testimony, they do not describe the limitations of the '636 Patent with sufficient particularity to establish a conception date prior to the filing of the Eastman Patent. At the end of the day, Northpoint's attempt to revive the '636 Patent on the grounds of prior conception does not convince.

As an important aside, Northpoint's Second Amended Complaint states:

> In 1997, the Tawils realized that in order to fully implement their technology, they needed to develop a system capable of receiving two signals simultaneously. This realization led ultimately to the inventions described in the '636 Patent.

(Clerk's Dkt. # 22 at 3). The factual allegations set forth in Northpoint's complaint are binding, even if they contradict sworn affidavits or interrogatory responses. *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987). How could the Tawils have concieved of the '636 Patent in 1996 if the realization leading to the '636 Patent took place in 1997? In light of this contradiction, Northpoint's argument that it conceived of the '636 Patent prior to 1997 falls flat on its face. But more generally, Northpoint's current attempt to establish a conception date in 1996 mirrors the 180 Northpoint pulled regarding whether the Eastman Patent anticipates the '636 Patent's claims. This sort of conduct is troubling.

### i. Northpoint's inventor testimony requires corroboration

At the heart of Northpoint's conception argument is Carmen Tawil's deposition testimony.

5

In her deposition, Mrs. Tawil states that she and her husband conceived of the '636 Patent "at least as early as September 16, 1996." *See* (Clerk's Dkt. # 125, Ex. F). But Mrs. Tawil's testimony alone is not enough. Corroboration is required where a party seeks to show conception through the oral testimony of an inventor. *See Price v. Symsek*, 988 F.2d 1187, 1195 (Fed. Cir. 1993). This requirement arose out of a concern that inventors testifying in patent infringement cases would be tempted to remember facts favorable to their case by the lure of protecting their patent or defeating another's patent. *See Eibel Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45, 60 (1923); *accord Deering v. Winona Harvester Works*, 155 U.S. 286, 300–01 (1894); *The Barbed Wire Patent*, 143 U.S. 275, 284–85 (1892); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995); *New Idea Farm Equip. Corp. v. Sperry Corp.*, 916 F.2d 1561, 1567 (Fed. Cir. 1990). Although perhaps prophylactic in application given the unique abilities of trial court judges and juries to assess credibility, the rule provides a bright line for both district courts and the PTO to follow in addressing the difficult issues related to invention dates. In assessing corroboration of oral testimony, courts apply a rule of reason analysis. *Price*, 988 F.2d at 1195. Under a rule of reason analysis, "[a]n evaluation of all pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached." *Id.* Thus, the Court must focus its inquiry on whether Northpoint can corroborate Mrs. Tawil's story.

### ii. There is no indication that Northpoint's corroborating evidence discusses the '636 Patent

Northpoint cannot corroborate Mrs. Tawil's testimony. But it makes an attempt with three documents: (1) a faxed letter dated September 18, 1996 from Carmen Tawil to Russ Culbertson (the Tawils' patent prosecutor) (Clerk's Dkt. # 125, Ex. B); (2) a letter dated September 25, 1996 from

6

Russ Culbertson to the Tawils (Clerk's Dkt. # 125, Ex. C); and (3) Russ Culbertson's activity-log notes recounting phone conversations with Mrs. Tawil on September 26 and 27, 1996 (Clerk's Dkt. # 125, Ex. D). None of this evidence—except possibly one line from Russ Culbertson's activity log—discusses the '636 Patent. This lack of corroboration is apparent when Northpoint's evidence is read along with two documents: (1) the testimony of the Tawils's patent prosecutor, Russ Culbertson (Clerk's Dkt. # 114, Ex. G); and (2) Northpoint's response to DirecTV's Interrogatory No. 14 (Clerk's Dkt. # 125, Ex. G).

Looking first at Northpoint's response to Interrogatory No. 14, it does not clarify the Tawil's inventive process with regard to the '636 Patent. Instead, it describes their general efforts to make improvements in the world of DBS satellite technology. *See id.* Essentially, Northpoint's response carves a nebulous description that does not distinguish between the "multiple applications for patent protection on various inventions related to . . . co-frequency technology." *See id.* at ¶ 13.

Turning next to Russ Culbertson's filing habits, the letters corroborating Mrs. Tawil's testimony regarding the '636 Patent were not found where one would expect them to be found—in the '636 Patent file. Instead, they were found in a "miscellaneous" file. *See* (Clerk's Dkt. # 114, Ex. G). So the file containing Northpoint's corroborating evidence in no way indicates that the documents it contains have anything to do with the '636 Patent. In fact, the earliest entry date in the actual '636 Patent file was April 14, 1998, 18 months after the letters Northpoint relies upon to show corroboration. *See id.* But more telling than the patent prosecutor's filing habits is what the patent prosecutor concluded when reviewing Northpoint's corroborating evidence.

According to Mr. Culbertson—the patent prosecutor for the '636, '663, and '605 Patents—none of Northpoint's corroborating documents refer to the '636 Patent. *See id.* When

reviewing Mrs. Tawil's September 18, 1996 letter, Mr. Culbertson determined that it was referring to the "already existing" '663 Patent. *See id.* And when reviewing his own September 25, 1996 letter, Mr. Culbertson concluded that it referred to the '605 Patent, which was filed on October 11, 1996. *See id.* It turns out, October 11, 1996 is one day before the filing deadline—October 12, 1996—that Mr. Culbertson's activity log indicates he discussed with Carmen Tawil on September 25, 1996. *See id.* So both letters and one of the two relevant references in Mr. Culbertson's activity log do not discuss the '636 Patent.

What remains of Northpoint's corroborating evidence is one line from Mr. Culbertson's activity log. This line recounts a September 27, 1996 phone conversation with Carmen Tawil and states that "[t]hey want to file a new application to claim simultaneous reception on the same frequency." *See* (Clerk's Dkt. # 125, Ex. D). Of course, there is no telling which Patent this single line refers to. Consider again Northpoint's explanation that during this general time frame the Tawlis were engaged in "multiple applications for patent protection on various inventions related to . . . co-frequency technology." *See* (Clerk's Dkt. # 125, Ex. G, ¶ 13). However, if there is any corroborating evidence for the '636 Patent, this single line is the extent of it. Everything else Northpoint relies upon refers to other patents.

> ### iii. Even if Northpoint's corroborating evidence refers to the '636 Patent, it does not disclose the elements of the '636 Patent with sufficient particularity to establish conception prior to the February 27, 1997 filing of the Eastman Patent

Even if all of Northpoint's evidence corroborates Mrs. Tawil's testimony regarding the '636 Patent, none of the documents describe the '636 Patent with sufficient particularity to establish conception prior to the filing of the Eastman Patent. At best, all of the evidence Northpoint uses to

8

support its conception argument shows a general goal for creating a satellite system that eventually matured into the '636 patent; this is insufficient. Conception requires "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986) (citation omitted). Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation. *See Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994); *see also Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985) (conception must include every feature of claimed invention). Here, none of the evidence produced by Northpoint satisfies the particularity requirement for conception. Indeed, none of the three documents cited by Northpoint discuss any of the following limitations from the '636 Patent: (1) "a first switch connected to a first input;" (2) "a second switch connected to a second input;" (3) "a data stream junction;" (4) "a controller for receiving a channel select input;" or (5) "a memory device operatively connected to the controller". But for argument's sake, the Court will briefly review Northpoint's evidence to determine whether is it shows conception.

The Court starts with the only evidence that could be considered a corroborating reference for the '636 Patent—the single line Mr. Culbertson wrote in his activity log recounting a conversation with Mrs. Tawil on September 27, 1996. *See* (Clerk's Dkt. # 125, Ex. D). Again, that single line states, "Telephone conference with Carmen, they want to file a new application to claim simultaneous reception on the same frequency." *Id.* This line, at most, identifies a general goal, not "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Hybritech Inc. v. Monoclonal*

*Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986) (citation omitted). "[A] new application to claim simultaneous reception on the same frequency" does not mention at least the following limitations set forth in the '636 Patent: (1) "a first switch connected to a first input;" (2) "a second switch connected to a second input;" (3) "a data stream junctionl;" or (4) "a controller for receiving a channel select input." Moreover, it is especially difficult to figure out how that one-line reference to "simultaneous reception on the same frequency" can demonstrate conception of "a memory device operatively connected to the controller". Indeed, the memory element of the '636 Patent was not part of the original '636 application, but was added only in an effort to overcome the PTO examiner's rejection of the '636 Patent. *See* (Clerk's Dkt. # 116, Ex. N). The point is, the single-line reference from September 27, 1996, which might refer to the '636 Patent, shows that the Tawil's possessed nothing more than a general goal for creating that system; conception demands much more.

The rest of Northpoint's evidence, which the Court already determined does not refer to the '636 Patent, also fails to meet the particularity standard for conception. Neither the September 18, 1996 letter from Mrs. Tawil, nor the September 25, 1996 letter from Mr. Culbertson, disclose any of the above-mentioned limitations. Adding further support, Mr. Culbertson, the attorney who prosecuted the '636 Patent, testified that both letters were missing numerous limitations of the '636 Patent. *See* (Clerk's Dkt. #114, Ex. G). Thus, even if Northpoint's evidence did corroborate Mrs. Tawil's testimony, it simply does not disclose enough information about the '636 Patent to satisfy the requirement for conception.

## Conclusion

After thoroughly reviewing the Parties' arguments and the summary judgment record, the

10

Court finds that the Eastman Patent anticipates claims 1, 7, 8, 14, 15, 16, 18, and 19 of Northpoint's '636 Patent, rendering those claims invalid. The Court also finds that Northpoint's conception date for the '636 Patent is not prior to the February 27, 1997 filing date of the Eastman Patent. Accordingly, DirecTV's Motion for Summary Judgement is **GRANTED** in **PART**. The Court does not consider whether the Lusignan Patent anticipates the '636 Patent.

IT IS SO ORDERED this 17TH day of June, 2011.

James R. Nowlin
UNITED STATES DISTRICT JUDGE